UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ATNEOSEN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> XPT, INC., et al., <br><br> Defendants. | Case No. 21-cv-05250-DMR <br><br> **ORDER ON MOTION TO REMAND** <br> Re: Dkt. No. 11 |

Plaintiffs Steven Atneosen and Amer Akhtar filed this breach of contract and employment discrimination case on March 22, 2021 in Santa Clara County Superior Court against Defendants XPT, Inc., XPT Limited, NIO USA, Inc., and NIO Inc. XPT Limited removed the action on the basis of diversity jurisdiction, asserting that there is complete diversity between the parties because XPT, Inc. and NIO USA, Inc. were fraudulently joined in the case. [Docket No. 1 (Notice of Removal, "NOR").] Plaintiffs now move to remand the action. [Docket No. 11.] This matter is suitable for determination without oral argument. Civil L.R. 7-1(b). For the following reasons, the motion to remand is granted.

I.  **BACKGROUND**

Plaintiffs make the following allegations in the complaint: Defendant NIO Inc. is an electric vehicle manufacturer headquartered in China. Compl. ¶¶ 1, 9. Defendants XPT Limited; XPT, Inc.; and NIO USA, Inc. are each wholly-owned subsidiaries of NIO Inc. *Id.* at ¶¶ 2, 7, 10. The complaint alleges that XPT, Inc. and NIO USA, Inc. are organized under the states of Delaware and California, respectively, and that both entities have a principal place of business in San Jose, California. *Id.* at ¶¶ 7, 10.

Plaintiffs allege that "all of the Defendants were joint employers of the Plaintiffs and that each of the Defendants was, at all times herein mentioned, the agent, employee, partner and/or

representative of one or more of the remaining Defendants and was acting within the course and scope of such relationship." They further allege on information and belief "that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants." *Id*. at ¶ 12.

The complaint refers to XPT Limited and XPT, Inc. together as "XPT." *Id*. at ¶ 2. Plaintiffs allege that Atneosen originally joined XPT as a consultant. In December 2016, he was promoted to Vice President of Corporate Development for North America and was responsible for global strategy, business planning, mergers and acquisitions, and United States operations. *Id*. at ¶ 15. Akhtar joined XPT in April 2016 as COO and head of United States operations. *Id*. at ¶ 16.

On June 1, 2018, Plaintiffs "were forced by the company to sign new employment contracts with XPT" which purported to change the nature of their employment from employees to independent contractors. Plaintiffs allege that "there was nothing about the terms and conditions of their employment that changed—only their compensation—thus they effectively remained employees of the company." The agreements, called the "Consultancy Agreements," contained a provision that XPT could terminate the agreements only in the event of a "material breach" that was not corrected within a certain amount of time. *Id*. at ¶¶ 19, 30.

Plaintiffs allege that XPT and NIO Inc. discriminated and retaliated against them throughout their tenures at XPT, including holding them to a higher standard than their Chinese and Chinese-American colleagues and paying them "less favorable compensation" than other employees at their level. *Id*. at ¶ 24-26. Specifically, Plaintiffs allege that between 2016 and 2018, they reported concerns to NIO Inc.'s founders "about incompetence, misuse of company resources, and conduct that potentially constituted fraud against NIO's investors by coworkers." *Id*. at ¶ 27. They further allege that "both XPT and NIO had a double standard for employees who were Chinese, or of Chinese descent, often overlooking their inappropriate and bad faith conduct, while at the same time holding its non-Chinese employees to a much higher standard." According to Plaintiffs, when they complained about this culture, they were retaliated against and eventually terminated. *Id*. at ¶ 27. Specifically, on December 16, 2019, Plaintiffs received letters from XPT's attorneys that informed them that their contracts were being terminated because their

"services as . . . independent contractor[s] [were] no longer necessary nor needed," which they allege was not a ground for early termination of the Consultancy Agreements. *Id*. at ¶ 22, 23, 32

Plaintiffs allege ten claims for relief against all four Defendants: 1) breach of the Consultancy Agreements; 2) breach of the implied covenant of good faith and fair dealing; 3) failure to pay wages in violation of California Labor Code section 200 et seq.; 4) failure to pay wages at termination in violation of California Labor Code section 201 et seq.; 5) race and national origin discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), California Government Code section 12940(a); 6) failure to prevent discrimination in violation of FEHA, California Government Code section 12940(k); 7) retaliation in violation of FEHA, California Government Code section 12940(h); 8) wrongful termination in violation of public policy; 9) violation of the Unruh Civil Rights Act, California Civil Code section 51 et seq.; and 10) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code section § 17200 et seq., which is premised on the alleged violations of FEHA and the Unruh Civil Rights Act.

In connection with each claim for relief, Plaintiffs allege that "each Defendant was at all times their joint employer and are, therefore, independently liable for the harms committed against Plaintiffs." *See* Compl. ¶¶ 36, 44, 51, 57, 69, 78, 86, 92, 99, 104.

On July 7, 2021, XPT Limited removed the case to federal court based on diversity jurisdiction. It states upon information and belief that Atneosen is a citizen of Minnesota and Akhtar is a citizen of California. NOR ¶¶ 22, 23. XPT Limited asserts that it is a citizen of Hong Kong; that NIO Inc. is a citizen of the Cayman Islands and China; and that NIO USA, Inc. is a California citizen. *Id*. at ¶¶ 26, 28, 32. Although the complaint alleges that XPT, Inc. is a company organized under the laws of Delaware with "its principal place of business in San Jose, California," XPT Limited contends that XPT, Inc. dissolved its corporate status in California on December 14, 2020, before Plaintiffs filed the complaint, and is a solely a citizen of Delaware. *Id*. at ¶¶ 29-31 (quoting Compl. ¶ 7); NOR Ex. 5 (Certificate of Surrender filed Dec. 14, 2020).

XPT Limited contends that NIO USA, Inc.'s California citizenship should be disregarded because it is a sham defendant, and that XPT, Inc. is also a sham defendant. NOR ¶¶ 35-41.

3

According to XPT Limited, there is "no possibility that Plaintiffs will be able to establish" any of their claims as to NIO USA, Inc. or XPT, Inc. because Plaintiffs did not enter into contracts with NIO USA, Inc. or XPT, Inc. and neither entity employed Plaintiffs. *Id.* at ¶¶ 42-136.

Plaintiffs now move to remand the case to state court.[1]

## II.   LEGAL STANDARD

### A.   Motion to Remand

Under 28 U.S.C. § 1441(a), a defendant may remove to federal court any matter that originally could have been filed in federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Federal courts are courts of limited jurisdiction and possess subject matter jurisdiction in civil cases based only on federal question or diversity jurisdiction. *Id.*; *see* 28 U.S.C. §§ 1331, 1332. The removing defendant bears the burden of establishing that removal was proper. *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 763 (9th Cir. 2002). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (stating that the removal statute is "strictly construe[d]" and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

### B.   Fraudulent Joinder

Federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and there is complete diversity of citizenship between the parties. *See* 28 U.S.C. § 1332(a); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) (complete diversity required to exercise jurisdiction under section 1332). Removal based on diversity jurisdiction is "proper despite the presence of a non-diverse defendant where that defendant is a fraudulently joined or sham defendant." *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1158 (C.D. Cal. 2009); *Ritchey v.*

---

[1] Defendants filed an administrative motion for leave to file a surreply, arguing that Plaintiffs raised new arguments in their reply brief. [Docket No. 15.] They submitted their proposed surreply. [Docket No. 15-2.] Plaintiffs did not object. Accordingly, the court grants the motion to file the surreply. Defendants also filed an objection to an exhibit attached to Plaintiffs' reply that purports to show the relationship between the four Defendants. [Docket No. 14.] As the court did not consider the exhibit in ruling on this motion, it denies the objection as moot.

4

*Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("[F]raudulently joined defendants will not defeat removal on diversity grounds."). In the Ninth Circuit, "a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Padilla*, 697 F. Supp. 2d at 1158; *see Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) ("We do not decide whether the plaintiff will actually or even probably prevail on the merits, but look only for a possibility that he may do so."). In such cases, the court may ignore the presence of the non-diverse defendant for purposes of determining diversity. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (citation omitted). Given the "strong presumption against removal jurisdiction" and a general presumption against fraudulent joinder, removing defendants bear a heavy burden to prove fraudulent joinder, with all ambiguity resolved in favor of remand to state court. *Id.* at 1042, 1046 (quotations omitted).

The Ninth Circuit has emphasized that a fraudulent joinder analysis is different from a Rule 12(b)(6) analysis, and requires remand if there is a "possibility" that a state court could find that the plaintiff has stated a cause of action against the allegedly fraudulent defendant:

> A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined. We emphasized in *Hunter* that a federal court must find that a defendant was properly joined and remand the case to state court if there is a "*possibility* that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants." *Hunter*, 582 F.3d at 1046 (emphasis added) (internal quotations and citation omitted) (quoting *Tillman*, 340 F.3d at 1279). This standard accords with that adopted by a majority of our sister circuits.
> . . .
> A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits. Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the "wholly insubstantial and frivolous" standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction. *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Franklin v. Murphy*, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984) ("A paid complaint that is 'obviously frivolous' does not confer federal subject matter jurisdiction."). The relative stringency of the standard accords with the presumption against removal jurisdiction, under which we "strictly construe the removal statute," and reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam).

5

*Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 549-50 (9th Cir. 2018).

A court may look beyond the pleadings to decide whether the joinder of the non-diverse defendant is fraudulent. *See McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent."); *Ritchey*, 139 F.3d at 1318 ("[A] defendant must have the opportunity to show that the individuals joined in the action cannot be liable on any theory."). Removing defendants must prove fraudulent joinder by "clear and convincing evidence," *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), and courts may consider "summary judgment-type evidence" when resolving claims of fraudulent joinder. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001).

### III. DISCUSSION

Plaintiffs move to remand this action to Santa Clara County Superior Court, arguing that that this court lacks subject matter jurisdiction because the parties are not diverse. They dispute XPT Limited's assertion that NIO USA, Inc. and XPT, Inc. are sham defendants. They also argue that XPT, Inc. remains a citizen of California. The court first addresses XPT, Inc.'s citizenship and then turns to whether NIO USA, Inc. and XPT, Inc. were fraudulently joined.

#### A. XPT, Inc.'s Citizenship

Plaintiffs allege that Defendant XPT, Inc. is a Delaware corporation with its principal place of business in San Jose, California. Compl. ¶ 7. Defendants assert that XPT, Inc. is no longer a California citizen because it dissolved its corporate status in California on December 14, 2020, before Plaintiffs filed the complaint. NOR ¶¶ 29-31.

For purposes of diversity jurisdiction, a corporation is considered a citizen of both the state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A party's citizenship is determined as of the date the complaint was filed. *See In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) (courts must "measure[ ] all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing" (quoting *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004))).

1    Plaintiffs argue that notwithstanding XPT, Inc.'s current status as a defunct California

2 corporation, it remains a California citizen. The Ninth Circuit has not taken a position on this

3 issue and there is a three-way split on the proper test for determining the citizenship of a defunct

4 or inactive corporation:

> Some courts look to both to the state of incorporation and to the state of the corporation's last business activity. * * * Some courts hold an inactive corporation has no "place of business" and therefore is a citizen only of its state of incorporation. * * * Other courts adopt a case-by-case approach: i e, if the corporation has been inactive for a substantial period of time (e g, 5 years), it is a citizen only of the state where it is incorporated. Otherwise, the court must examine the company's activities as it was closing its doors and determine whether its business had a continuing impact in that locale. If so, the place of its last business activity would be relevant to (but not dispositive of) the determination of its "principal place of business."

*Patel v. Sugen, Inc.*, 354 F. Supp. 2d 1098, 1111-12 (N.D. Cal. 2005) (quoting Schwarzer, Tashima & Wagstaffe, *Cal. Practice Guide: Federal Civil Procedure Before Trial* at ¶ 2:321.4 (2004)).

Plaintiffs argue that the court should apply the third approach, known as the "functional approach," in determining the citizenship of XPT, Inc. and examine the length of the period of its inactivity. *See* Mot. 10 (citing *Homestead Lead Co. v. Doe Run Resources Corp.*, 282 F. Supp. 2d 1131, 1137 (N.D. Cal. 2003)). Courts in this circuit favor the functional approach on the ground that it "best equips the court to carry out the intent of Congress." *See Homestead*, 282 F. Supp. 2d at 1137; *Sellers v. Kohlberg & Co., LLC*, No. C 01-01365 WHA, 2001 WL 761187, at *3 (N.D. Cal. Jun. 29, 2001); *Patel v. Sugen, Inc.*, 354 F. Supp. 2d 1098, 1112 (N.D. Cal. 2005); *Parker v. Moore*, No. C 08-1896 PJH, 2008 WL 2220613, at *1 (N.D. Cal. May 27, 2008); *Sports Shinko Co. v. QK Hotel, LLC*, 486 F. Supp. 2d 1168, 1178 (D. Haw. 2007). As one court explained, "[b]y considering the residual impact of an inactive corporation's prior business activities upon the locality at time of suit, the functional approach prevents a corporation that just became inactive [from] remov[ing] the suit to federal court on diversity jurisdiction." *Sellers*, 2001 WL 761187, at *3. On the other hand, the functional approach "allows removal for an inactive corporation with no local connections or with a past principal place of business somewhere other than the place of its last activity." *Id*.

7

Defendants do not advocate for a different approach. Instead, they argue that there is no "bright-line amount of time" during which a corporation must have been inactive for its citizenship to lapse. Opp'n 22-23.

The court agrees with the reasoning of the cases cited above and applies the functional approach here. Under that test, "[w]hen a *substantial period of time* has lapsed since a corporation was active, its citizenship reverts to include only its state of incorporation." *See Homestead*, 282 F. Supp. 2d at 1136 (emphasis added) (citing *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 291-92 (4th Cir. 1999) (three-year period of inactivity in Maryland rendered it an out-of-state corporation), and *Harris v. Black Clawson Co.*, 961 F.2d 547, 551 (5th Cir. 1992) (five-year period of inactivity is a substantial period of time)).

Here, the operative date for determining diversity of citizenship is March 22, 2021, the date Plaintiffs filed the complaint. NOR ¶ 1, Ex. 1. XPT, Inc. ceased doing business in California on December 14, 2020, when it filed a Certificate of Surrender with the California Secretary of State. NOR Ex. 5. Accordingly, XPT, Inc. had been a defunct corporation for just over three months at the time Plaintiffs commenced this action. Three months of inactivity is not a substantial period of time. *Compare Sellers*, 2001 WL 761187, at *4 ("less than two years of inactivity is not sufficient enough of time for it to be removed from local interests . . . ") *and Patel*, 354 F. Supp. 2d at 1113 (six month period of inactivity is not a substantial period of time), *with Homestead*, 282 F. Supp. 2d at 1137 (13 years is substantial), *and Ibrahim v. Fiat Chrysler Automobiles*, No. CV1910744MWFPLAX, 2020 WL 7094066, at *2 (C.D. Cal. Oct. 28, 2020) (three years is substantial). The court concludes that XPT, Inc. was a citizen of California for purposes of diversity jurisdiction at the time Plaintiffs filed the complaint. As a result, if the court concludes that either NIO USA, Inc. *or* XPT, Inc. was not fraudulently joined, the court lacks diversity jurisdiction over this case.

**B.     Fraudulent Joinder**

Plaintiffs argue that Defendants have not met their burden of proving that XPT, Inc. and NIO USA, Inc. were fraudulently joined. They assert that "each Defendant jointly and separately exercised direct and indirect control over Plaintiffs' employment conditions" and was their joint

8

employer for purposes of all of their claims for relief.  Mot. 6.

FEHA "prohibits only 'an employer' from engaging in improper discrimination" and "predicates potential liability on the status of the defendant as an employer." *Vernon v. State of California*, 116 Cal. App. 4th 114, 123 (2004) (quotation marks and citations omitted) (citing Cal. Gov't Code §§ 12940(a), 12926).  In determining whether a defendant is a joint employer under California law, courts "consider the 'totality of circumstances' that reflect upon the nature of the work relationship of the parties, with emphasis upon the extent to which the defendant controls the plaintiff's performance of employment duties." *Vernon*, 116 Cal. App. 4th at 124, 126-31 (concluding that State of California was not plaintiff's employer for purposes of FEHA).  "The key factor to consider in analyzing whether an entity is an employer is the right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682 (9th Cir. 2009) (quoting *Serv. Emps. Int'l Union v. Cnty. of Los Angeles*, 225 Cal. App. 3d 761, 769 (1990)) (examining contention that defendant was plaintiffs' employer and subject to suit "for any breach of contract or violation of labor laws.").  Other factors include:

> [P]ayment of salary or other employment benefits and Social Security taxes, the ownership of the equipment necessary to performance of the job, the location where the work is performed, the obligation of the defendant to train the employee, the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, the authority to establish work schedules and assignments, the defendant's discretion to determine the amount of compensation earned by the employee, the skill required of the work performed and the extent to which it is done under the direction of a supervisor, whether the work is part of the defendant's regular business operations, the skill required in the particular occupation, the duration of the relationship of the parties, and the duration of the plaintiff's employment.

*Vernon*, 116 Cal. App. 4th at 125.

The complaint alleges that "all of the Defendants were joint employers of the Plaintiffs and that each of the Defendants was, at all times herein mentioned, the agent, employee, partner and/or representative of one or more of the remaining Defendants and was acting within the course and scope of such relationship."  Compl. ¶ 12.  Plaintiffs identify specific support for their allegation that XPT, Inc. and NIO USA, Inc. were Plaintiffs' joint employers:

- An April 2016 form filed on behalf of XPT, Inc. with the California Secretary of State identified Plaintiff Akhtar as XPT, Inc.'s Chief Operating Officer and agent for service of process. [Docket No. 11-3 (McElhinny Decl., Aug. 9, 2021) ¶ 4, Ex. 2.]
- XPT, Inc. is the sole entity on earnings statements from December 2019 for both Akhtar and Atneosen. The statements identify "XPT Inc-HQ" as the "location." [Docket Nos. 11-1 (Atneosen Decl., Aug. 9, 2021) ¶ 2, Ex. A; 11-2 (Akhtar Decl., Aug. 9, 2021) ¶ 2, Ex. A.]
- Plaintiffs worked at NIO USA, Inc.'s San Jose facility and NIO USA, Inc. moved their desks "several times to successively more remote and uncomfortable spots in the NIO U.S. facility . . . until one day their desks were removed with no advance notice leaving [Plaintiffs] without any office space," Compl. ¶ 27, an allegation that they contend forms part of the basis for their FEHA retaliation claim, Mot. 8.
- Parent company NIO Inc.'s CEO William Li instructed Atneosen "to work with NIO's U.S. office . . . to ensure that all necessary components of the ES8 and ES6 projects were identified and delivered," including NIO USA, Inc.'s employees. Compl. ¶ 27.
- NIO USA, Inc.'s failure to "deliver their project on time" resulted in Plaintiffs taking on additional work, and "it was XPT and NIO's expectation that [Plaintiffs] were responsible for ensuring nothing [NIO USA, Inc.'s head, Padma Warrior] did adversely affected the company." Compl. ¶ 27.
- Employees of NIO USA, Inc., including Mary Yang, "perform[ed] similar level work" and were treated more favorably due to their race and/or national origin. Compl. ¶¶ 25-26.
- Plaintiffs reported concerns about "incompetence, misuse of company resources, and conduct that potentially constituted fraud," including by NIO USA, Inc.'s employees, and were retaliated against. Compl. ¶ 27.

Mot. 8-9. Plaintiffs argue that the foregoing evidence and allegations support their claim that XPT, Inc. and NIO USA, Inc. shared control of the "terms and conditions" of their employment, thus qualifying them as joint employers. Plaintiffs also note that they have exhausted their

administrative remedies as to XPT, Inc. and NIO USA, Inc., and have received right-to-sue letters from California's Department of Fair Employment and Housing as to both entities. McElhinny Decl. ¶ 3, Ex. 1.

Defendants acknowledge that California uses a "totality of circumstances" test to determine whether a defendant is a joint employer. Opp'n 2. They contend that courts also use the "integrated enterprise" test to determine whether two corporations may be treated as a single employer for purposes of liability. *Id*. at 3 (citing *Laird v. Cap. Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737 (1998)). The integrated enterprise test considers four factors: 1) interrelation of operations; 2) common management; 3) centralized control of labor relations; and 4) common ownership or financial control. *Id*. Courts often deem the third factor, centralized control of labor relations, the most important. "A parent's broad general policy statements regarding employment matters are not enough to satisfy this prong. To satisfy the control prong, a parent must control day-to-day employment decisions of the subsidiary." *Id*. (citations omitted).

Defendants address the evidence and allegations that Plaintiffs contend support the conclusion that XPT, Inc. and NIO USA, Inc. were their joint employers. Opp'n 7-20. Defendants argue that Plaintiffs have not offered "any facts in either the complaint or the motion to remand that could support the existence of a joint employer relationship" and contend that it would be impossible for Plaintiffs to do so. Opp'n 4 ("They simply cannot support [the joint employer] claim due to the impossibility of providing any supporting facts."). They submit a declaration by XPT Limited's CEO, Alan Zeng, in which he discusses Plaintiffs' Consultancy Agreements with XPT Limited, his understanding of Plaintiffs' job responsibilities, and the connections between Plaintiffs and XPT, Inc. and NIO USA, Inc. [Docket No. 12-1 (Zeng Decl. Aug. 23, 2021).]

Notably, Defendants do not dispute several key points raised by Plaintiffs. First, they do not dispute that Akhtar was the COO and agent for service of process for XPT, Inc. In fact, Zeng admits that Akhtar "held all of the officer positions at XPT, Inc. . . . until his Consultancy Agreement was terminated in December 2019." He attaches XPT, Inc.'s May 2018 Statement of Information filed with the California Secretary of State listing Akhtar as the CEO, Secretary, Chief

11

Financial Officer, and agent for service of process, as well as XPT, Inc.'s April 25, 2016 "Action by Unanimous Consent of the Board of Directors" appointing Akhtar as COO. Zeng Decl. ¶¶ 30-32, Exs. G, H. Notwithstanding this evidence, Defendants argue that Akhtar's positions with XPT, Inc. "do[ ] not demonstrate that XPT, Inc. controlled the 'manner and method' of Plaintiffs' work performance at XPT Limited," which they contend is necessary to demonstrate a joint employer relationship between the entities. Opp'n 7. Defendants' position is nonsensical, since their own evidence supports the conclusion that XPT, Inc. was Akhtar's actual direct employer. This evidence alone defeats Defendants' contention that it would be "impossible" for Akhtar to prevail against XPT, Inc. on any of his claims.

Defendants also do not dispute that XPT, Inc. appeared on Plaintiffs' earnings statements, and admit that "payment of salary or other employment benefits and Social Security taxes" is one of the factors courts must take into account in assessing joint employer liability. *See* Opp'n 10 (citing *Vernon*, 116 Cal. App. 4th at 125). Zeng states in his declaration that "[t]he actual funds for Amer Akhtar's salary and taxes came from XPT Limited, regardless of whether any pay stub bore the name 'XPT Inc.'" Zeng Decl. ¶ 14. However, Zeng's declaration is curiously silent about whether XPT, Inc. paid the funds for Atneosen's salary, which would support a joint employer finding. *See Vernon*, 116 Cal. App. 4th at 126-31 (discussing the factors supporting the conclusion that the State of California was not plaintiff's employer, including the fact that it did not compensate plaintiff). Moreover, accepting Zeng's statement that XPT Limited paid Akhtar's compensation as true, this could bear on whether XPT Limited and XPT, Inc. were an integrated enterprise. *See Laird*, 68 Cal. App. 4th at 739 (discussing plaintiff's failure to produce evidence that parent corporation "kept [subsidiary's] books, issued its paychecks, or paid its bills.").

The remainder of Defendants' opposition consists of their responses to Plaintiffs' allegations regarding joint employment, including the allegations that Plaintiffs worked at NIO USA, Inc.'s California facility and that NIO USA, Inc. eventually removed their desks from the facility; that NIO Inc.'s CEO tasked Atneosen with working with NIO USA, Inc.'s employees; that tasks for which NIO USA, Inc. was responsible were reassigned to Plaintiffs; and that Plaintiffs were treated less favorably than NIO USA, Inc.'s employees due to discrimination.

12

1  Defendants argue that even accepting the allegations as true, they do not establish the existence of
2  a joint employer relationship and do not show the requisite control of "day-to-day employment
3  decisions" by XPT, Inc. or NIO USA, Inc. Whether Plaintiffs will ultimately prevail on their
4  assertion that XPT, Inc. and/or NIO USA, Inc. is liable under a joint employment or integrated
5  enterprise theory is not the issue before the court. Instead, the question is whether Defendants
6  have established that there is "no possibility" that Plaintiffs could recover against either entity.
7  *See Padilla*, 697 F. Supp. 2d at 1158. The factors that bear on joint employment "are intertwined"
8  and "cannot be applied mechanically as separate tests," *see Vernon*, 116 Cal. App. 4th at 125, and
9  Plaintiffs have offered evidence and allegations that are relevant to that inquiry. Defendants have
10 not shown that Plaintiffs cannot prevail on their claims as to XPT, Inc. and/or NIO USA, Inc. as a
11 matter of law. Accordingly, the court cannot find that either entity was fraudulently joined. The
12 court lacks subject matter jurisdiction over this action and grants Plaintiffs' motion to remand.

### C. Request for Attorneys' Fees

The removal statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Plaintiffs request an unspecified award of attorneys' fees and costs under 28 U.S.C. § 1447(c). Mot. 11-12. They do not support the request with evidence of the actual amount of fees and costs they incurred in connection with the removal.

"Absent unusual circumstances, a court may award costs and attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 552 (9th Cir. 2018) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). "Removal is not objectively unreasonable 'solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted.'" *Id.* (quoting *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008)).

Here, Defendants' basis for removal was objectively unreasonable. As discussed above, Defendants' own evidence shows that XPT, Inc. identified Akhtar as its Chief Operating Officer, agent for service of process, CEO, Secretary, and Chief Financial Officer in forms filed with the

13

California Secretary of State, and that XPT, Inc.'s own Board of Directors appointed Akhtar as Chief Operating Officer. Zeng Decl. Exs. G, H. Defendants were also aware that XPT, Inc. is the sole entity listed on Plaintiffs' earnings statements and that the statements identify "XPT Inc-HQ" as their place of work. This evidence of an actual employment relationship with XPT, Inc. alone is sufficient to defeat the "no possibility" standard for fraudulent joinder. Therefore, the argument for removal would only be reasonable if XPT, Inc. was not a California citizen at the time the complaint was filed. However, Defendants' position that XPT, Inc.'s dissolution rendered it solely a citizen of Delaware was also objectively unreasonable. Defendants do not dispute that the "functional approach" should be used to determine XPT, Inc.'s citizenship following its dissolution. It cited no authority to support its conclusion that three months of inactivity is a "substantial period of time" such that XPT, Inc.'s California citizenship lapsed. Indeed, such a position cannot be squared with any authority from within this circuit.

Accordingly, an award of attorneys' fees and costs under 28 U.S.C. § 1447(c) is appropriate. By no later than May 11, 2022, Plaintiffs shall submit a declaration sworn under penalty of perjury setting forth the amount of reasonable attorneys' fees and costs they "incurred as a result of the removal," as well as support for the hourly rate(s) requested. Defendants may file an objection to the amount of fees and costs requested by no later than May 18, 2022. The court will take the matter under submission on the papers filed.

## IV. CONCLUSION

For the foregoing reasons, the court grants Plaintiffs' motion to remand this matter to the Superior Court of the State of California, County of Santa Clara. The court also finds that an award of attorneys' fees under 28 U.S.C. § 1447(c) is warranted because Defendants' removal argument is objectively unreasonable.

**IT IS SO ORDERED.**

Dated: May 3, 2022



_____
Donna M. Ryu
United States Magistrate Judge

14